In re Debbie Lynn **BADING**, f/k/a Debbie Lynn Bish, f/d/b/a That Special Touch, f/k/a Debbie Lynn Schneider, Debtor.

Bankruptcy No. 91–54296–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 25, 1993.

---

Richard P. Corrigan, San Antonio, TX, for debtor.

John Patrick Lowe, Uvalde, TX, Chapter 7 Trustee.

### ORDER ON MOTION FOR RECONSIDERATION AND REFORMATION OF ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the motion of Debtor for reconsideration and reformation of an order of this court granting a Trustee's motion for turnover of a portion of a tax refund received by the Debtor post-petition but attributable to prepetition income. Upon consideration thereof, it is the ruling of the court that the motion should be denied.

### BACKGROUND FACTS

The facts of this case are not in dispute. The Debtor filed chapter 7 on November 8, 1991. On November 21, 1991, she got married. She and her husband filed a joint income tax return for 1991, combining their income and deductions from 1991. A refund was generated in the amount of $2,167.00. The Trustee lays claim to 85.4% of one-half of the refund ($926.17), because that represents the percentage of 1991 which was prior to the Debtor's bankruptcy filing. The Debtor says that her share of the income tax refund, i.e., that portion attributable only to her income (and deductions) for the tax year 1991, was $178.00, and 85.4% of that is $152.01. That, says the Debtor, is all the Trustee is entitled to recover for the estate.

### ANALYSIS

Though the dollars in the case are not large, the issue has significance for the administration of a wide variety of chapter 7 cases. Simply stated, how does one compute the portion of a debtor's refund which belongs to the chapter 7 estate? The question is focused here by the fact that the Debtor's filing status for tax purposes changed *post-petition*, resulting in a different refund being generated for her prepetition income than would otherwise have resulted had she not got married in the time frame between her bankruptcy filing and the end of the tax year. All agree that, had she not got married in 1991, her refund would only have been $178.00, and the Trustee's share would have been $152.01. The Debtor says that what happened post-petition should not change that result, as the Trustee is only entitled to what was (or would have been) property of the estate as of the date of filing (when she was single). The Trustee says that he is entitled to the applicable percentage share of the Debtor's *actual* refund, and that neither the Trustee nor the court should be required to reconstruct the Debtor's tax return to come up with a "what if" refund.

The Trustee's is the more persuasive position. A simple hypothetical demonstrates why. Suppose the timing of the bankruptcy was such that it *followed*, instead of preceded, the Debtor's marriage, but the Debtor got married in the same calendar year. Suppose also that the amount of the refund to which the Debtor, filing a joint tax return with her husband for the year, exceeds what she would be entitled to had she not married. Under federal tax law, she is entitled to file a tax return as though she were married on the first day of the calendar year. And under bankruptcy law, no one would argue that the Trustee would be entitled to anything less than that percentage of her tax refund attributable to the time period preceding the commencement of the case. *See In re Barowsky*, 946 F.2d 1516, 1518 (10th Cir.1991) (portion of chapter 7 debtor's tax refund attributable to prepetition portion of taxable year was property of the estate); *In re Orndoff*, 100 B.R. 516, 518 (Bankr.E.D.Cal.1989) (same); *In re Smith*, 77 B.R. 633, 635 (Bankr. N.D.Ohio 1987) (same). What changes in the situation in which the Debtor marries *after* she files bankruptcy? For purposes of the federal tax laws, absolutely nothing. Her tax status (and attendant liability) is based on her marital status as of the close of the tax year, regardless of when she actually marries. Bankruptcy changes that rule not a wit. Bankruptcy law, in the meantime, simply allocates to the estate

that portion of any refund attributable to earnings pre-petition.[1]

Were we to adopt the Debtor's approach, we would have to construct an exception to the tax laws not found in the Internal Revenue Code and not mandated by the property rights provisions of the Bankruptcy Code. That is nothing less than an invitation to judicial legislation, on grounds that it is "the right thing to do." Were the court satisfied that the Trustee's reading of the Bankruptcy and Internal Revenue Codes led to an absurd result, the court would be entitled to fashion an appropriate remedy to remove the absurdity. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("plain meaning of legislation should be conclusive except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.' ") (citation omitted). But the Trustee's reading does not lead to an absurd result. To the contrary, it leads to an easily applied, straightforward rule for parsing entitlements in tax refunds, one that does violence to neither the Bankruptcy nor the Internal Revenue Code.

When it comes to property entitlements, the Bankruptcy Code is not a statute written in the subjunctive mood; it is written in the indicative mood. The Debtor's test, stated in the subjunctive (as it must be) is all out of step with the simplicity and clarity of the statute's indicative mood. The Debtor has little, really, to complain about. Had she indeed *not* married in the tax year that generated the larger refund, she would only in fact have received the smaller refund, and would only owe the Trustee the very amount she now proposes

he receive. But she *did* marry, and that fact has consequences under the Internal Revenue Code that the Debtor is perfectly willing to take advantage of for tax purposes,[2] but which she desires this court to ignore for bankruptcy purposes. Better we stick with the indicative mood, and follow the rule indicated by the language of the statutes. That language tells us in a straightforward fashion to parse tax refunds based not on "what ifs" but what is.

For the foregoing reasons, the court denies the motion to reconsider. The ruling of the court will stand, in favor of the Trustee.

So **ORDERED**.

---

1. Courts have rejected the notion that a refund is not property of the estate just because it was generated from a tax return filed after bankruptcy for a tax year prior to the commencement of the case (including for a tax year contemporaneous with the year of bankruptcy filing). *See Matter of Doan*, 672 F.2d 831, 833 (11th Cir.1982); *In re Johnson*, 136 B.R. 306, 309 (Bankr.M.D.Ga.1991); *In re Wallen*, 75 B.R. 897, 908 (Bankr.D.Conn.1987). Instead, courts are to focus on the period of time in which the debtor earned the money to which the refund is attributable. This is wise, because the tax re-

fund represents nothing more than a liability of the United States resulting from a pre-petition overpayment of taxes. Rooted in the pre-bankruptcy life of the debtor, the refund cannot be said to be property acquired by the debtor (as opposed to the estate) post-bankruptcy.

2. That is, she shares in one-half of the refund which her husband's income helped to generate, even though she wasn't married to him for most of the tax year.